## United States District Court
## for the
## District of New Jersey

| | |
|---|---|
| Geraldine Coleman,<br>   Plaintiff<br><br>  v.<br><br>CashCall, Inc.<br>   Defendant | Civil Action No. 09-2942 |

### MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT CASHCALL, INC.
### TO STAY PROCEEDINGS AND COMPEL ARBITRATION

On November 24, 2006, First Bank & Trust, N.A. ("First Bank") approved a loan application submitted by Plaintiff via First Bank's marketer and servicer, Defendant CashCall, Inc. ("CashCall"). On that date, First Bank electronically deposited $2,600 in Plaintiff's bank account. Thereafter, Plaintiff repaid roughly half of the amount due. Her loan went into default, and she made no further payments on it.

Now, seeking to avoid her obligations under her loan agreement and unjustly retain the proceeds of her loan, Plaintiff brings this action. However, in her Complaint, Plaintiff misrepresents the facts giving rise to her claims and omits entirely the requirement in her loan agreement that obligates her to resolve these claims in binding arbitration. Although Plaintiff's claims are meritless, the proper forum for them is arbitration. Accordingly, CashCall respectfully requests that the Court grant this Motion and order Plaintiff to abide by the terms of her Loan Agreement and seek resolution of this dispute in arbitration.

I.  **STATEMENT OF FACTS**

First Bank is headquartered in Brookings, South Dakota and chartered by the Office of Comptroller of Currency ("OCC") pursuant to the National Bank Act ("Bank"). *Id.* at ¶ 5. One of the many banking products that First Bank offers is an unsecured consumer installment loan. *Id.* at ¶¶ 4-5. First Bank has contracted with various third parties to market and service these installment loans. *Id.* at ¶ 5.

CashCall is a California Corporation with its principal place of business in Anaheim, California. Id. at ¶ 4. CashCall markets and services loans offered by national banks, such as First Bank, who are permitted by Section 85 of the National Bank Act, 12 U.S.C. §1, *et seq.*, to make loans at their respective home state interest rates to consumers residing outside of such home state. *Id.* at ¶ 5.

With regard to the loans that CashCall markets and services for First Bank and other banks, all substantive activities related to the loans, including the setting of credit standards, loan underwriting, approval or rejection of loan applications and electronic disbursement of the loan proceeds, are performed by the lending bank at its offices in South Dakota. *Id.* at ¶ 6. Ministerial functions, such as marketing, advertising and servicing, are performed by CashCall. *Id.* at ¶ 7. With respect to its marketing and servicing activities, CashCall adheres to guidelines set by the FDIC, and the FDIC audits all services provided by CashCall to its insured banks. *Id.* at ¶ 5. This bifurcation is reflected in the First Bank & Trust Promissory Note and Disclosure Statement ("First Bank Note") that Plaintiff executed, which specifies that while CashCall is the "marketing agent" for the loan, CashCall was not responsible for and did not make any credit or lending decisions. *Id.* at ¶ 7. All credit and lending decisions were made by First Bank, and First Bank originated and funded this loan. *Id.*

On November 20, 2006, Plaintiff contacted CashCall by telephone to request a loan application. *Id.* at ¶ 9. Plaintiff was directed to CashCall's website, and on November 24, 2006 Plaintiff accessed CashCall's website and applied for a loan with First Bank. *Id.* at ¶¶ 9-10. First Bank approved her application for a loan for $2,600, and Plaintiff was provided with the First Bank Promissory Note and Disclosure Statement ("First Bank Note"). *Id.*; *see also* First Bank Note, attached hereto as Exhibit B. Plaintiff was instructed to read the First Bank Note in its entirety. *See* Ex. B. In addition to disclosures regarding the terms of the loan, and clearly disclosing that South Dakota law applied to the loan terms, the First Bank Note contained a comprehensive arbitration agreement (the "Arbitration Agreement"), introduced with the following **bold, ALL CAPS** language:

> ARBITRATION. PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. I UNDERSTAND THAT UNLESS I EXERCISE THE RIGHT TO OPT-OUT OF ARBITRATION IN THE MANNER DESCRIBED BELOW, I AGREE THAT ANY DISPUTE WILL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO HAVE A JURY, TO ENGAGE IN DISCOVERY (EXCEPT AS MAY BE PROVIDED IN THE ARBITRATION RULES), AND TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES. I ALSO AGREE ANY ARBITRATION WILL BE LIMITED TO THE DISPUTE BETWEEN MYSELF AND YOU OR THE HOLDER OF THE NOTE AND WILL NOT BE PART OF A CLASS-WIDE OR CONSOLIDATED ARBITRATION PROCEEDING.

*Id.*

At the outset, the Arbitration Agreement makes clear that it will be governed by the Federal Arbitration Act (FAA), 9 U.S.C.S. § 1 et seq. "and the substantive law of the State of South Dakota (without applying its choice of law rules)." *Id.* All costs of the arbitration will be paid by either First Bank, its agent(s) (such as CashCall), or any subsequent holder of the

3

promissory note. *Id.* Unless the parties agree otherwise, the arbitration will be held in the same city as the U.S. District Court closest to Plaintiff's current mailing address. *Id.* The arbitrator must issue a written decision "consistent with this Agreement and applicable law," or otherwise either party may seek to have it set aside by judicial review. *Id.* The Arbitration Agreement requires the arbitrator to apply the terms of the loan agreement. *Id.* The Arbitration Agreement does not require Plaintiff to waive any claim, damages or any right to relief by agreeing to arbitrate. *Id.* Should Plaintiff substantially prevail in the arbitration, she may recover all of her attorneys' fees and costs. *Id.*

Finally, the First Bank Note provides Plaintiff with the right to opt-out of the arbitration agreement entirely. *Id.* The "**Right to Opt-Out**" is specified in **bold font**, and provides Plaintiff with a full sixty (60) days after disbursement of the loan proceeds to opt-out of arbitration entirely by simply notifying the holder of the note in writing at the address specified in the opt-out provision of her intentions:

> **Right to Opt-Out.** I understand that if I do not wish my account to be subject to this Arbitration Agreement, I must advise you in writing at P.O. Box 8040, Brookings, South Dakota 57006. I understand that I must clearly print or type my name and account number and state that I reject arbitration. I understand that I must give written notice, and it is not sufficient to telephone you. I understand that you must receive my letter at the above address within sixty (60) days after the date my loan funds or my rejection of arbitration will not be effective.

*Id.*

In order to execute the First Bank Note and receive her loan proceeds, Plaintiff was required to electronically sign the following disclosure:

> **I HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION.**

*Id.*

Upon her execution of the First Bank Note on November 24, 2006, First Bank funded her loan in accordance with the terms of the First Bank Note. *See* Ex. A. at ¶ 10.

Having repaid some, but not all, of the amount due on her loan with First Bank, Plaintiff filed this lawsuit, seeking to avoid her obligations under the First Bank Note. Plaintiff has asserted violations of New Jersey statutes, the Truth In Lending Act and a claim for infliction of emotional distress. Plaintiff seeks damages, fees, costs, rescission of the contract and injunctive relief. Although meritless, for the reasons set forth below, the proper forum for resolution of this dispute is arbitration.

## II.   ARGUMENT

The FAA creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act. Section 2 of the FAA, which governs the Arbitration Agreement, provides that an arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." The United States Supreme Court has repeatedly held that courts must "'rigorously enforce' arbitration agreements according to their terms." *Volt Info. Scis., Inc. v. Bd. Of Trs. Of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). As the Supreme Court noted in *Green Tree Financial Corp. v. Randolph*, "[w]e are mindful of the FAA's purpose to reverse the longstanding judicial hostility to arbitration agreements." 531 U.S. 79, 89 (2000). Enforcement of arbitration agreements is not discretionary. 9 U.S.C. § 4; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). When reviewing an arbitration agreement, a court must limit its analysis to the validity of the arbitration agreement itself, and not to the underlying contract. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006).

As the unambiguous language of Plaintiff's agreement with First Bank makes clear, the proper forum for this dispute is arbitration and the FAA governs this dispute. Precedent

authoritative in this Court as well as governing South Dakota law overwhelmingly both favor the enforcement of agreements to arbitrate. *See, e.g., Thunderstik Lodge, Inc. v. Reuer*, 1998 SD 110, ¶ 14, 585 N.W.2d 819, 822 (S.D. 1998) ("We have consistently favored the resolution of disputes by arbitration."). Because the Arbitration Agreement at issue here is clearly disclosed, consumer-friendly and fully enforceable under the governing law, the Court should enforce the contract as written and refer this matter to arbitration.

### A. The Parties' Designation of South Dakota Choice of Law in the Arbitration Agreement Is Enforceable.

As set forth above, the Arbitration Agreement in the First Bank Note unambiguously provides that "[t]he arbitrator will apply applicable federal and South Dakota substantive law and the terms of this Agreement." This "**Applicable Law and Judicial Review**" is prominently set forth in bold font, alerting Plaintiff to it. And, as also discussed above, Plaintiff by her signature acknowledged that she had read and understood all the terms of the Arbitration Agreement, including its choice of law provision. "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 130 N.J. 324, 341, 614 A.2d 124, 133 (1992). Here, the application of South Dakota law does not implicate any public policy concerns, and therefore New Jersey's choice-of-law principles require that South Dakota law be applied.

Aside from the Parties' conspicuous designation of South Dakota law in the Arbitration Agreement, both the parties and the transaction at issue have a strong nexus to the State of South Dakota. The loan was funded by First Bank, which is headquartered in Brookings, South Dakota. First Bank originated the loan and disbursed funds to Plaintiff electronically from South Dakota, and Plaintiff was obligated to repay those funds via ACH electronic funds transfers that

6

would be originated and processed in South Dakota. All substantive activities related to the loans, including the setting of credit standards, loan underwriting and approval or rejection of loan applications, were performed by First Bank in South Dakota. Plaintiff knowingly reached out to a South Dakota bank to obtain her loan; the First Bank Note clearly and repeatedly identifies First Bank as the lender, and provides First Bank's Milbank, South Dakota address. Given the parties' clear and unambiguous designation of South Dakota law, as well as the strong transactional nexus to the State of South Dakota, New Jersey's choice-of-law principles require application of South Dakota law to a determination of the enforceability of the Arbitration Agreement.

**B.     The Arbitration Agreement Is Enforceable Under South Dakota Law.**

Leaving aside the fact that the Arbitration Agreement requires Plaintiff to resolve "any issue concerning the validity, enforceability, or scope of this arbitration agreement" in arbitration, the Arbitration Agreement is fully enforceable under both South Dakota and federal law. Ordinarily, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2" of the FAA. *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) (citations omitted). With respect to unconscionability, the South Dakota Supreme Court requires a Plaintiff invoking the defense of unconscionability to establish both procedural and substantive unconscionability. *Nygaard v. Sioux Valley Hosp. & Health Sys.*, 731 N.W.2d 184, 194-195 (S.D. 2007). Given the consumer-friendly nature of the Arbitration Agreement as a whole, and the clear and unambiguous manner in which all its terms were disclosed, none of these defenses are available to Plaintiff here.

1.  **The Arbitration Agreement Is Not Procedurally Unconscionable.**

Procedural unconscionability "deals with the process of making the contract, including a meaningful choice." *Johnson v. John Deere Co.*, 306 N.W.2d 231, 237 (N.D. 1981). When evaluating a claim of procedural unconscionability, courts are concerned with whether there is an element of unfair surprise in the contract, whether the terms are difficult to find, read or understand, and whether the consumer had meaningful choices before acting. *See e.g., Braun v. E.I. Du Pont De Nemours and Co.*, 2006 WL 290552, * 7-8, 58 UCC Rep.Serv.2d 868, ¶ 24-25 (D. S.D. 2006). As the South Dakota Supreme Court has explained, procedural unconscionability "proximates the common law of fraud and duress." *Johnson*, 306 N.W. 2d at 237. None of these circumstances are present.

Here, the terms of the Arbitration Agreement were clearly and conspicuously disclosed in bold font, such that they could not be missed or ignored by Plaintiff. The Arbitration Agreement was prominently disclosed in **bold** font under the heading "**Agreement to Arbitrate.**" Immediately above the "Agreement to Arbitrate," under the heading of "**ARBITRATION**," Plaintiff was instructed in **bold CAPITALIZED** font to, "**PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.**" In the same **bold**, capitalized font, the "Arbitration" provision advised Plaintiff that she was agreeing:

> **THAT ANY DISPUTE WILL BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO HAVE A JURY, TO ENGAGE IN DISCOVERY (EXCEPT AS MAY BE PROVIDED IN THE ARBITRATION RULES), AND TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING.**

Under South Dakota law, this prominent disclosure of the obligation to submit any dispute to binding arbitration vitiates any claim of procedural unconscionability. *See e.g., Baldwin v. Nat'l*

*College*, 537 N.W.2d 14, 17 (S.D. 195) (holding that unfair surprise cannot be argued when the language of the contract is unambiguous and clear).

In order to receive her loan proceeds, Plaintiff was required to electronically sign the following disclosure:

> **I HAVE READ AND UNDERSTAND THE ARBITRATION SECTION OF THIS NOTE AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THAT SECTION.**

Plaintiff had the opportunity to review the entire First Bank Note, including the Arbitration Agreement, prior to signing and did so. If she did not understand the any aspect of the First Bank Note or Arbitration Agreement, she was also provided with the opportunity to ask CashCall questions prior to signing: "If you have any questions, please call 1-866-590 CASH." Alternately, additional information was available at CashCall's website, which was disclosed in the First Bank Note immediately below CashCall's telephone number (www.cashcall.com). Plaintiff lacks any basis to ask the Court to rewrite a contract she apparently now regrets. *See Morela v. Federal Barge Lines, Inc.*, 746 F.2d 1347, 1351 (8th Cir. 1984) ("[C]ourts of law do not sit in order to save parties from their contractual mistakes); *Geldermann & Co. v. Lane Processing, Inc.*, 527 F.2d 571, 576 (8th Cir. 1975) ("It is not the province of the courts to scrutinize all contracts with a paternalistic attitude and summarily conclude that they are partially or totally unenforceable merely because an aggrieved party believes that the contract has subsequently proved to be unfair or less beneficial than anticipated.").

Most importantly, the Arbitration Agreement allowed Plaintiff a full sixty days from the date her loan funded to unilaterally opt-out of arbitration entirely simply by notifying CashCall in writing at the address specified in the Loan Agreement. Consistent with the other terms of the Arbitration Agreement, Plaintiff was alerted to this right by **bold** font:

9

> **Right to Opt Out.** I understand that if I do not wish my account to be subject to this Arbitration Agreement, I must advise you in writing at P.O. Box 8040, Brookings, South Dakota 57006. I understand I must clearly print or type my name and account number and state that I reject arbitration. I understand that I must give written notice, and it is not sufficient to telephone you. I understand that you must receive my letter at the above address within sixty (60) days after the date my loan funds or my rejection of arbitration will not be effective.

(Importantly, CashCall possessed no such right, and CashCall remains obligated to resolve any dispute with Plaintiff in arbitration). As with the rest of the terms of the Arbitration Agreement, Plaintiff's right to opt was conspicuously disclosed, in plain English. Having foregone the opportunity to avail herself of the right to opt-out of arbitration, Plaintiff cannot now be heard to complain that she lacked any meaningful choice with respect to arbitration.

Finally, the Plaintiff here possessed numerous other financial alternatives other than CashCall. She was free to obtain a loan from other financial service providers, including banks, pawn shops, title lenders, and credit cards, to name a few. She could also turn to friends and family for financial assistance, or seek an advance on her salary from her employer. Despite these alternatives, Plaintiff nonetheless elected to obtain a loan from First Bank. As such, Plaintiff cannot establish that the Arbitration Agreement is procedurally unconscionable, and she cannot now rewrite her loan agreement to avoid resolving her claims in arbitration.

### 2. The Arbitration Agreement Is Not Substantively Unconscionable.

Nor can Plaintiff argue that the Arbitration Agreement is substantively unconscionable. To establish substantive unconscionability, Plaintiff must demonstrate that the Arbitration Agreement contain overly harsh or one-sided terms. *Johnson*, 306 N.W.2d at 237. Here, any claim of substantive unconscionability fails because the obligation to arbitrate all disputes was mutual, with one key exception in Plaintiff's favor: Plaintiff had a full sixty days to unilaterally opt-out of arbitration entirely. Under these circumstances, a claim of substantive unconscionability fails.

Beyond that, the consumer-friendly nature of the Arbitration Agreement undermines any claim of substantive unconscionability. Importantly, the Arbitration Agreement complies with the Consumer Due Process Protocols of the American Arbitration Association, which is one of the largest and most-respected arbitral forums in the world. *See* http://www.adr.org/sp.asp?id=22019. The Arbitration Agreement requires the parties to conduct the arbitration in the same city as the U.S. District Court closest to Plaintiff's current mailing address, unless the parties mutually agree otherwise. Plaintiff cannot argue that the Arbitration Agreement contains a substantively unconscionable forum selection clause, as arbitration will take place near to or equidistant to this Court.

Additionally, the Arbitration Agreement requires that the arbitration process itself be conducted in a fair and consumer-friendly manner. The Arbitration Agreement requires the arbitrator to apply the terms of the loan agreement. The arbitrator must issue a written decision "supported by substantial evidence and [] consistent with this Agreement and with applicable law," or otherwise either party may seek to have it set aside by judicial review. The Arbitration Agreement does not require Plaintiff to waive any claim, damages or any right to relief by agreeing to arbitrate. Should Plaintiff substantially prevail in the arbitration, she may recover all of his attorneys' fees and costs.

Finally, arbitration is not prohibitively expensive – indeed, it will in all likelihood be *less expensive* than litigation. In *Green Tree Fin. Corp.-Alabama v. Randolph*, the United State Supreme Court held that where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Here, Plaintiff can make no such showing because CashCall is contractually obligated to advance

or otherwise reimburse Plaintiff for the entire cost of the arbitration. And should Plaintiff substantially prevail on her claims, she may recover all of her attorneys' fees and costs in the arbitration process. Specifically, the Arbitration Agreement provides,

> **Cost of Arbitration.** I understand that [First Bank or CashCall] will pay the filing fee and any costs or fees charged by the arbitrator regardless of which party initiates the arbitration. Except where otherwise provided by applicable law, each party will be responsible for its own attorneys' fees and other expenses. Unless prohibited by law, the arbitrator may award fees, costs, and reasonable attorneys' fees to the party who substantially prevails in the arbitration.

Arbitration provides the parties with the means to effect a quick and inexpensive resolution to this dispute, while avoiding the expense and delay inherent in judicial proceedings. *Azcon Constr. Co., Inc. v. Golden Hills Resort, Inc.*, 498 N.W.2d 630, 633 (S.D. 1993). Importantly, however, the terms of the Arbitration Agreement are not "one-sided." To the contrary, they are entirely mutual, with one important exception that favors Plaintiff: Plaintiff – but not CashCall – may opt-out of arbitration simply by notifying CashCall in writing of her intent to do so within sixty days after she receives her loan proceeds. Beyond that, there are no improper "carve-outs" allowing for resolution of certain claims other than in arbitration. Additionally, CashCall shoulders the entire cost of arbitration. Manifestly, Plaintiff cannot carry her burden of establishing that the Arbitration Agreement is substantively unconscionable.

**C.     Assuming *Arguendo* That New Jersey Law Applies, Plaintiff Remains Obligated To Resolve This Dispute In Arbitration.**

Assuming *arguendo* that New Jersey law (and not South Dakota law) applies to the Arbitration Agreement, the result would be no different: Plaintiff remains obligated to resolve this dispute in binding arbitration. In particular, because of the consumer-friendly nature of the Arbitration Agreement as a whole and the clear and unambiguous manner in which all its terms were disclosed, none of the common law contractual defenses are available to Plaintiff here.

12

Like South Dakota, New Jersey requires a litigant asserting the defense of unconscionability to establish both procedural unconscionability (that is, unfairness in the formation of the contract) and substantive unconscionability (that is, excessively disproportionate terms). *See Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 (N.J.Super.Ch. 2002). Analyzing the same factors as South Dakota courts, New Jersey courts have recognized that where the language of the arbitration agreement is clear and unambiguous, and does not contain "fine print and convoluted or unclear language," then the agreement is not procedurally unconscionable. *Aull v. McKeon-Grano Assoc., Inc.*, 2007 WL 655484, *7 (D. N.J. 2002); *Duffy v. Samsung Elec. America, Inc.*, 2007 WL 703197, *5 (D. N.J. 2007) ("unconscionability includes the procedural abuse of unfair surprise, usually manifested as a concealment of important facts"); *see e.g., Collins v. Uniroyal, Inc.*, 315 A.2d 16, 22 (N.J. 1974) (upholding the contract where "[t]he limitation of [the] remedy provision in the guarantee was clearly written in language which a layman could easily comprehend. Rather than being hidden away...").

Additionally, as set forth above, because the terms of the Arbitration Agreement are both mutual and consumer-friendly, Plaintiff cannot establish that her obligations are so one-sided as to shock the court's conscience, and thus substantively unconscionable. *See e.g., B&S Ltd., Inc. v. Elephant & Castle Int'l, Inc.*, 906 A.2d 511, 522 (N.J. Super. Ch. 2006) (holding that the exchange of obligations in the arbitration agreement was not one-sided when its forum selection clause dictated an arbitral forum outside of New Jersey). And again, Plaintiff possessed an important right not available to CashCall: the right to unilaterally opt-out of arbitration entirely simply by notifying CashCall in writing at the address specified in the Loan Agreement, at any point within a sixty days after her loan funds, further vitiating any claim of unconscionability. *See Guadagno v. E*Trade, Inc.*, 592F. Supp. 2d 1263 (C.D. Cal. 2008) (presence of sixty day

opt-out provision precluded finding under California or Virginia law that arbitration agreement was procedurally unconscionable); *accord, Fluke v. CashCall, Inc.*, No. 08-5776, 2009 WL 1437593 (E.D. Pa. May 21, 2009) (presence of sixty day opt-out provision precluded finding under Delaware or Pennsylvania law that arbitration agreement was procedurally unconscionable.)

Furthermore, because the Arbitration Agreement provides that attorney fees may be awarded to the prevailing party, if Plaintiff were to prevail on her state law claims, she would likely fair appreciably better in arbitration than in a New Jersey court litigating under New Jersey law. That is, while New Jersey law and policy generally disfavor the shifting of attorney's fees and costs, its courts will recognize and enforce contractual fee shifting provisions, such as the provisions contained in the Arbitration Agreement. *See King v. GNC Franchising*, 2007 WL 1521253, *3 (D. N.J. 2007) ("While the Court recognizes that New Jersey law has a strong policy disfavoring the shifting of attorneys' fees, it is well settled that courts will enforce contractual fee shifting provisions"); *Bergen Rex Transp. v. Trailer Leasing Co.*, 158 N.J. 561, 569-70 (N.J. 1999).

Finally, any attempt by Plaintiff to argue that the presence of a class action waiver renders the Arbitration Agreement unconscionable lacks any basis in fact. In *Muhammad v. County Bank of Rehoboth Beach, Del.*, 189 N.J. 1 (2006), the New Jersey Supreme Court found that, because the value of plaintiff's claim was approximately $600, a provision waiving the litigant's right to seek class-based relief was unconscionable because it would be difficult for the plaintiff to find counsel to represent her individually. As Plaintiff seeks damages far in excess of

14

$600, and obtained counsel to file her claim individually in federal court, Plaintiff cannot rely on *Muhammad* to establish substantive unconscionability.[1]

As is demonstrated above, the Arbitration Agreement is fully enforceable under New Jersey law. Accordingly, Plaintiff must be compelled to arbitrate all claims against CashCall.

## III.   CONCLUSION

As set forth above, Plaintiff voluntarily entered into an enforceable, binding contract wherein she agreed to resolve any dispute in binding arbitration. Plaintiff was provided, but declined to exercise, the right to opt-out of arbitration. As the unambiguous language of the Arbitration Agreement and the applicable law makes clear, Plaintiff is bound by her agreement and must seek resolution of this dispute in arbitration.

---

[1]   Indeed, the value of Plaintiff's case places it in line with *Delta Funding Corp. v. Harris*, 189 N.J. 28 (2006) (enforcing class-waiver provision in a mortgage contract, in a case decided the same day as *Muhammad*, where the value of the plaintiff's claim far exceeded $600).

**WHEREFORE**, CASHCALL, INC. respectfully requests that the Court enter an order commanding Plaintiff to adjudicate her claims on an individual basis in arbitration.

Respectfully Submitted,

Dated: August 21, 2009            By: /s/ J. Michael Kunsch

                                                     J. Michael Kunsch
                                                     NJ Identification No. JK 4607
                                                     1515 Market Street, Suite 1900
                                                     Philadelphia, Pennsylvania 19102
                                                     Telephone: (215) 563-9811
                                                     Facsimile:  (215) 557-0999
                                                     michael.kunsch@sweeneyfirm.com

                                                     Claudia Callaway (applying *pro hac vice*)
                                                     Michael White (applying *pro hac vice*)
                                                     Hana F. Brilliant (applying *pro hac vice*)
                                                     KATTEN MUCHIN ROSENMAN, LLP
                                                     2900 K Street, NW, Suite 200
                                                     Washington, DC  20007
                                                     Telephone:   (202) 625-3590
                                                     Facsimile:    (202) 625-3543
                                                     claudia.callaway@kattenlaw.com

                                                     *Attorneys for Defendant CashCall,*
                                                     *Incorporated*